# Carter *v.* The State.

*Indictment for Carnal Abuse of Female Child.*

1. *Competency of child as witness.*—The admissibility of children as witnesses depends, not merely upon their possessing a competent degree of understanding, but also, in part, upon their having received such a degree of religious instruction as not to be ignorant of the nature of an oath, or of the consequences of falsehood.

2. *Same; preliminary examination.*—When a child of tender years is produced as a witness in court, it is the duty of the presiding judge to examine him or her, without the interference of counsel further than the judge may choose to allow, in regard to the obligation of the oath taken by a witness; and, in a proper case, to explain the same to one who is intelligent enough to understand what he says; and then to determine whether or not the child shall be sworn and permitted to testify.

3. *Same.*—*Held*, in this case, that a little negro girl, about nine years old, was improperly permitted to testify as a witness, when the only evidence as to her competency was, that in answer to questions put to her by defendant's counsel, she said, "that she did not know what the Bible was; had never been to church but once, and that was to her mother's funeral; did not know what book it was she laid her hand on when sworn; had heard tell of God, but did not know who it was; and said, if she swore to a lie, she would be put in jail, but did not know she would be punished in any other way."

FROM the Circuit Court of Butler.

Tried before the Hon. JOHN K. HENRY.

The defendant in this case was tried and convicted under

[Carter v. The State.]

an indictment which charged, that he "did carnally know, or abuse in the attempt to carnally know, Mary Godwin, a female under the age of ten years." On his trial, he reserved a bill of exceptions to several rulings of the court; one of which was the admission of the child, Mary Godwin, as a witness, against his objection, under the facts stated in the bill of exceptions, which are also stated in the opinion of the court.

No counsel appeared in this court for the prisoner, so far as the record and dockets show; and there is no brief on file.

H. C. TOMPKINS, Attorney-General, for the State.

MANNING, J.—The rule insisted on in all the books is, that "the admissibility of children as witnesses depends, not merely upon their possessing a competent degree of understanding, but also, in part, upon their having received such a degree of religious instruction as not to be ignorant of the nature of an oath, or of the consequences of falsehood." 1 Phillipps on Ev., 4th Amer. Ed. with Cowen & Hill's notes, 11, 12. In *Rex v. Williams* (7 Car. & P. 320), a child eight years old, who, up to the time of the event of which she was to testify, had received no religious training, nor had ever heard of God, or of future rewards and punishments, and had never prayed; and who, in the interval (about sixteen weeks) between that time and the trial, had been twice visited and instructed by a clergyman, as to the nature and obligation of an oath, but still appeared manifestly to have no real understanding on the subject of religion, or a future state, was not permitted to testify. In Massachusetts, it was said, in 1813, that by the later opinions it was the settled law at that time, "if an infant appear, on examination by the court, to possess a sufficient sense of the wickedness and danger of false-swearing, he may be sworn, although of ever so tender an age. The credit of the witness . . . . is to be judged of by the jury, from the manner of his testimony, and other circumstances."—*Comm. v. Hutchinson*, 10 Mass. 225.

If, after the event of which he is to testify, a child, previously ignorant, is by instruction made to understand the nature of the obligation to speak the truth which is imposed by an oath, he is then a competent witness. And it has been held, that the trial of a criminal cause may be postponed, when an important witness for the prosecution is a child, that he or she may in the meantime receive such instruction. 1 Leach, 430, note; *Rex v. Nichols*, 2 C. & Kirw. 246. But

disapprobation of such a practice has been expressed by other judges. In Cowen & Hill's notes to Phillipps on Evidence, *supra*, the case of one *Jenner* is cited, in which a girl nine years old, very intelligent, but ignorant of the nature of an oath, and of the moral penalty of false-swearing, was instructed by the judge on the spot, and then sworn.—1 Vol. 11, note 8. And so essential is it to the repression of crime, that the public shall not, in all cases, be deprived of the testimony of those, however low in the scale of civilization, who have memory and intelligence enough to relate what they have seen and know, that formerly a statute of this State made it the duty of the presiding judge, whenever a negro slave was a witness, " to explain to him or her the nature of the oath to be administered, and to state to him or her the punishment for swearing falsely;" it being assumed that such instruction would be sufficient to qualify those most ignorant in these particulars, who were not deficient of mind, to be sworn and give evidence to be considered by the jury. Clay's Dig. 473, § 9.

When, however, a child of tender years is produced as a witness, it is the duty of the presiding judge to examine him or her, without the interference of counsel further than the judge may choose to allow, in regard to the obligation of the witness' oath; and, in proper cases, to explain the same to one intelligent enough to comprehend what he says; and then to determine whether or not such child shall be sworn and permitted to testify.

In this case, an examination that seems to us to have been inadequate, was had. The witness was a little negro-girl, about nine years old; and to questions put by counsel for defendant, she "answered, that she did not know what the Bible was; had never been to church but once, and that was to her mother's funeral; did not know what book it was she laid her hand on when sworn; had heard tell of God, but did not know who it was; and said, if she swore to a lie, she would be put in jail, but did not know she would be punished in any other way." This is all the record contains on this subject. And thereupon the judge, without more, permitted her to be sworn and give evidence. Seeing how fully her testimony was corroborated, and the apparent artlessness with which it was given, the jury probably yielded entire credence to what she said; and we regret we cannot permit the verdict and judgment to stand. But it is obvious that, according to the rules of evidence which courts are bound by, the answers elicited from the witness did not show her to be competent. Counsel for defendant obtained from her just so much as tended to confirm the contrary

conclusion, and there the examination was permitted to stop, when probably a few questions, put with the design to enable the formation of an impartial judgment, would have disclosed either that she had a sufficient sense of the wickedness and danger of swearing falsely, or sufficient intelligence to understand instructions on the subject, which the judge might then have given.

Under the rule, and upon the evidence, we are constrained to hold that the circuit judge erred in permitting this witness to be sworn and testify, and that the judgment must be, therefore, reversed, and the cause remanded. Let the defendant be kept in custody, until discharged by due course of law.