# Grimes v. The State.

### Indictment for Rape.

1. *Indictment for rape; when not demurrable for duplicity.*—An indictment containing two counts, one of which charges the defendant with rape, and the other with carnal knowledge of a female under 10 years of age, is not demurrable for duplicity; since there is but one unlawful act charged, and the indictment is thus framed to meet the different phases in which the evidence might present the offense.

2. *Pleading and practice; plea in abatement too late when filed third term after arraignment, and after pleading to the indictment.*—A plea in abatement because of misnomer comes too late when interposed for the first time at the third term of the court after defendant's arraignment, and after he has pleaded to the indictment, and the cause has been continued at his instance ; and the court does not err in disallowing such plea.

3. *Witness; competency, notwithstanding tender years.*—Where a child of tender years, upon being examined by the court as to her competency to testify as a witness, states that if she swore falsely and did wrong she would go to hell, but that if she told the truth and did right she would go to heaven, such answers show the child to be a competent witness, without being questioned as to her belief in a Supreme Being.

4. *Trial and its incidents; improper statements by presiding judge.*— Where on the examination of a witness by the court to test her competency, the defendant insists that the witness should be examined as to her knowledge of the nature of an oath, and the consequence of a false oath, and of the punishments and rewards in a future state, it is improper for the court to remark that the witness knew nothing about a future state, nor did the court or the defendant's attorney or any body else, and that such questions were questions of theology with which courts of law had nothing to do ; such remarks by the pre-

[Grimes v. The State ]

siding judge being uncalled for and having a tendency to detract from the responsibility and solemnity of an oath.

5. *Same; improper argument of counsel.*—When, in the argument of a capital case the State's solicitor urges the jury to sentence the defendant to the penitentiary rather than impose the death penalty, because if he was hanged the State would be deprived of his services and the profit therefrom. he transcends the bounds of legitimate argument, since no such consideration should influence the jury in the exercise of the discretion the law reposes in them to fix the degree and extent of the punishment, which should be fixed according as the facts of the case show the offense to be more or less aggravated, without regard to profit to the State.

6. *Charge to jury; not erroneous for superfluous words.*—A charge to the jury which asserts a correct principle of law and is not obscure in its meaning is not rendered erroneous by a superfluous word used therein; and in a criminal case a charge which instructs the jury "that each juryman must separately and seggregately be satisfied beyond a reasonable doubt and to a moral certainty that defendant committed" the offense charged, before they can find him guilty, is clear in its meaning, asserts a correct principle, and is not vitiated by the use of the superfluous and meaningless word *seggregately*, and the refusal to give such charge is error.

7. *Argumentative and abstract charges* and charges that invade the province of the jury are always properly refused.

APPEAL from the Circuit Court of Washington.

Tried before the Hon. JAMES T. JONES.

The appellant in this case, Sanford Grimes, was tried and convicted under an indictment charging in one count rape, and in the other, carnal knowledge of a female under 10 years of age; and was sentenced to the penitentiary for life.

The defendant demurred to the indictment on the ground that there is a misjoinder of counts in that in the first the defendant is charged with rape, and in the second count he is charged with carnal knowledge, two distinct and different offenses. This demurrer was overruled.

Upon the introduction by the State of Bertie Grimes as a witness, the defendant objected to her examination as a witness in the case, on account of her tender years, and requested the court to put the witness Bertie Grimes on her *voir dire*. The bill of exceptions recites : "The court then asked the witness if she knew that it was wrong to tell a lie. The witness answered, 'yes.' The court stated that the court was satisfied with the witness. The defendant in-

sisted that the witness should be examined touching her knowledge of punishments and rewards in a future state; the defendant insisting that the witness was incompetent to testify unless she showed some knowledge of the nature of an oath, and the consequences of a false oath. The court stated that the witness knew nothing about a future state, that that was a question of theology, with which courts have nothing to do. The court stated further that the court knew nothing about a future state, and that the solicitor and the attorney for the defendant knew nothing about a future state, neither did any body else know anything about such matters. To these remarks by the court the defendant duly and legally excepted. The court stated, however, that while the court was satisfied with the competency of the witness, Bertie Grimes, for the benefit or satisfaction of defendant or defendant's attorney, the court would further question the witness touching her knowledge and belief in a future state of rewards and punishments. The court then asked the witness, Bertie Grimes, if she swore a lie and did bad, if she knew where she would go when she died. The witness answered that she would go to hell. To this answer of the witness the court remarked, 'that is right, that is orthodox.' The court then asked the witness if she swore the truth and did right, if she knew where she would go when she died ; the witness answered she would go to Heaven. To this answer the court remarked, 'that is right, that is orthodox.' The court again ruled that the witness was competent, to which ruling the defendant duly and legally excepted, and defendant further insisted that the witness Bertie Grimes be further questioned and examined to test her knowledge and belief in a Supreme Being, a God, a Rewarder of good and evil. The court again ruled the witness competent, and held it not necessary for the court to examine the witness touching her knowledge and belief in a Supreme Being, to which ruling the defendant duly and legally excepted." The other facts of this case, which relate to the rulings of the trial court reviewed on the present appeal, are sufficiently stated in the opinion. Among the charges which were asked by the defendant, and to the refusal to give each of which he separately excepted was the following: (7.) "The court charges the jury, that each juryman must separately and seggregately be satisfied

beyond a reasonable doubt and to a moral certainty, that defendant committed the outrage on Bertie Grimes alias Bertie Taylor, before they can find the defendant guilty of any offense."

W. C. DAVIS, for appellant.—The court erred in refusing to give the 7th charge requested by the defendant.—*Carter v. State*, 103 Ala. 93.

W. C. FITTS, Attorney-General, for the State. The 7th charge asked by the defendant was made unintelligible by the use of a word which is not in the English language, and for that reason it was properly refused.—*Brassell v. State*, 91 Ala. 45; *Beason v. State*, 72 Ala. 191.

COLEMAN, J.—The indictment contains two courts; the first charging the defendant with rape, the second, with carnal knowledge of a female under ten years of age. The indictment was thus framed to meet the different phases in which the evidence might present the offense. If force was used or the party made to yield unwillingly, the offense would come under the first count. On the other hand, if the evidence showed carnal knowledge of a female of such tender years, as to be incapable of legal consent, the offense would be covered by the second count, There was but one unlawful act charged. The demurrer was properly overruled.— *Beason v. The State*, 72 Ala. 191. At the third term after the arraignment of the prisoner, and after he had pleaded to the indictment, and had the cause continued, he interposed a plea in abatement, because of a misnomer. The plea came too late, and the court did not err in disallowing it.

When the party with whom it was alleged the defendant had sexual intercourse was offered as a witness, the defendant inquired as to her competency to testify. Some of the remarks of the judge as to a future state of rewards and punishment, were uncalled for. The sentiments expressed may have been the opinion of the person presiding, but were certainly not proper and were not calculated to add weight to the responsibility and solemnity of an oath. We are of opinion the answers of the witness were such as to show that she was competent, and the court did not err in receiving her

[Gaimes v. The State.]

testimony.—*Beason's Case*, 72 Ala. 191.

In his argument the solicitor urged the jury to sentence the prisoner to the penitentiary rather than to impose the death penalty, upon the ground that if hanged his services would be lost to the State, whereas the State might be greatly profited by his labor, if sentenced to the penitentiary. No such considerations should influence the jury in the exercise of a discretion the law reposes in them as to the degree and extent of the punishment. The facts of the case, showing the offense to be more or less aggravated, should control the discretion of a jury, and not the pecuniary profit of a conviction and sentence. Profit to the State is not a fact upon the issue of guilt or innocence, or extent of punishment.

The charges requested by the defendant, with the exception of No. 7, were properly refused. There was evidence tending to show the guilt of the defendant, and the general charge should not have been given. The other charges refused were either argumentative, abstract, or invaded the province of the jury.

We are of opinion that charge No. 7 should have been given. The only criticism to which this charge is subject is in the use of the word "seggregately." We have not found the word in any standard dictionary or work, but segregate and segregated are not infrequently used, and their meaning, very generally understood. Its use was unnecessary in the charge and superfluous, but a mere superfluity does not vitiate a charge. The charge was not obscure in its meaning. The principal of law asserted was correct, and the court erred in its refusal. For the error committed the judgment must be reversed.

Reversed and remanded.